Leonard Benowich (LB-6129)
ROOSEVELT & BENOWICH, LLP
1025 Westchester Avenue
White Plains, NY 10604
(914) 946-2400

Vincent Briccetti (VB-3285)
BRICCETTI, CALHOUN & LAWRENCE, LLP
81 Main Street
White Plains, New York 10601
(914) 946-5900

**Attorneys for Plaintiffs**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

PRM REALTY GROUP, LLC,
PRM NURSING HOME, LLC and
PETER R. MORRIS,                                04 Civ. _____ (    )

                       Plaintiffs,          **COMPLAINT**

        -against-

STEVEN E. FISHMAN, STEVEN FREIBERG,
ARNOLD R. WHITMAN, ANTHONY ZINGARELLI,
DAVID SCHICK a/k/a DAVID KATZ,
ZA CONSULTING, LLC, ZA HOLDINGS, LLC,
DIVERSIFIED EUROPEAN HOLDINGS LIMITED,
ZAC PROPERTIES, LLC,
FORMATION CAPITAL, LLC,
FC INVESTORS, LLC, FC PROPERTIES, LLC,
REDWOOD CAPITAL ADVISORS, LLC,
MOBILEXUSA, LLC,
MOBILEX ACQUISITION GROUP, LLC
ZAC MOBILEX HOLDINGS, LLC,
FORMATION CAPITAL ASSET MANAGEMENT, LLC,
AUGUST ASSOCIATES, LLC, JOHN DOES 1-25,
and XYZ CORPORATIONS OR LIMITED
LIABILITY COMPANIES 1-25,

                    Defendants.

------------------------------------x

Plaintiffs, PRM Realty Group, LLC and PRM Nursing Home, LLC (collectively "PRM") and Peter R. Morris ("Morris"), by their attorneys, Roosevelt & Benowich, LLP and Briccetti, Calhoun & Lawrence, LLP, as and for their Complaint against defendants, respectfully allege as follows:

<u>**Nature of this Action**</u>

1.  This is an action for an accounting and damages resulting from the labyrinthian fraud, of as yet undetermined magnitude, conceived and implemented by defendant Steven Fishman, with the assistance of defendants Steven Freiberg, Fishman's chief financial officer, Anthony Zingarelli, Fishman's chief operating officer, and Arnold Whitman (a member of his team that Fishman shielded from Morris), in concert with Fishman's criminal associate, defendant David Schick a/k/a David Katz (and other "investors" acting as nominees or fronts for Schick), and the other entity defendants herein (collectively the "Fishman Entities"), through which Fishman solicited and induced plaintiffs (and others) to make substantial investments of cash, capital, credit, guarantees and other financial investments and accommodations in reliance on Fishman's promise and assurance that Fishman and plaintiffs would form, as they did form, a joint venture, in which plaintiffs and Fishman would be equal partners and invest in health care businesses and properties, through the various Fishman Entities.  In violation of their duties under federal and state law, their joint venture agreement and the fiduciary duties they assumed and owed to plaintiffs, defendants

fraudulently converted and misappropriated plaintiffs'
substantial, multi-million dollar investment in the joint venture
and, upon information and belief, they continue to do so.

2.   Defendants used plaintiffs' investment for their
own use and benefit – including engaging in criminal activity, at
least a part of which is the basis of the current indictment in
the Eastern District of New York against defendant Schick, to
which he plead guilty on October 29, 2003 – as a result of which
defendants have not only misappropriated plaintiffs' investment,
but have concealed their fraud by failing to prepare, keep and
show books and records (on behalf of the joint venture and the
various Fishman Entities in and through which the joint venture's
various investments were made), failing to reflect plaintiffs'
investment and, at least in some instances, failing to indicate
that plaintiffs had any ownership or other interest in the joint
venture or the properties acquired through the joint venture,
thus facilitating defendants' unlawful and fraudulent re-sale and
re-syndication of plaintiffs' ownership and economic interests in
the joint venture and the properties and businesses acquired in
or through the joint venture.

3.   As will be set forth, plaintiffs and Fishman
entered into a joint venture agreement pursuant to which
plaintiffs were to receive fifty-percent of the joint venture and
fifty-percent of Fishman's interest in each of the Fishman
Entities.  Through the concealed fraudulent activity described in
this Complaint, Fishman and the individual defendants used the

entity defendants (and Schick's nominee investors) as the vehicles and conduits for their fraud. In many cases operating assets – occupied real estate – were bought and leased, with substantial cash flow and income generated thereby. Yet, Fishman and the other defendants fraudulently concealed such income from plaintiffs and diverted it to themselves through the Fishman Entities.

4. In reliance on the promise of a joint venture (in which plaintiffs would own half of Fishman's eighty-percent interest in ZAC and otherwise would be equal partners in the entire venture, plaintiffs invested upwards of $10 million in the form of cash, capital and guarantees, and they introduced Fishman and the other defendants to investors who invested more than $50 million in the various properties and businesses acquired by or through the joint venture and the Fishman Entities.

5. Although the joint venture was formed in 2001, in the years since then, Fishman, Freiberg, Zingarelli and Whitman – the individuals responsible for the operations and administration of the joint venture and one or more of the Fishman Entities – effectively refused to permit plaintiffs or their accountants necessary and appropriate access to the books and records of the joint venture or the Fishman Entities. Recently, however, they provided plaintiffs with a limited opportunity to review some books and records, many of which were hastily and belatedly prepared. As a result, plaintiffs recently have learned that (a) much of their investment in the joint venture and Fishman

Entities (and the assets acquired thereby) has been used by
Fishman  and the Individual Defendants for improper, unlawful
and, in some cases, criminal purposes; (b) plaintiffs' very
status as an investor in and substantial owner of the joint
venture and its constituent entities and assets, worth more than
$350 million, is simply not reflected; (c) in many cases
investors other than plaintiff are reflected on the books as
being the owners of ownership interests that had been acquired
and held by plaintiffs; and (d) there are no accurate books and
records showing the assets or properties acquired and owned by
the joint venture or the various defendants.

     6.   The Individual Defendants have conducted a years-
long and massive fraud, through which they fraudulently induced
plaintiffs and others to invest in a joint venture and to make
other substantial investments, including those described herein.
Defendants, however, have diverted and misappropriated many
millions of dollars, and property valued at many hundreds of
millions of dollars, to their own use and enjoyment, as part of
the massive and elaborate financial crimes, crimes for which
Schick recently has been indicted in the Eastern District of New
York, U.S. v. Schick, 03-CR-1134 (ARR), and which he admittedly
committed while on release pending sentencing for a prior
indictment.  U.S. v. Schick, 97-CR-1019 (ARR) (E.D.N.Y.) and 97-
CR-1164 (CB) (S.D.N.Y.).

     7.   Documents available in U.S. v. Schick, 03-CR-1134
reveal that Schick engaged in, among other things, fraudulent

Page 5

check deposit and withdrawal transactions at several national banks (including PNC, the bank at which at least some of the Fishman Entities maintained their accounts), that such activities were carried on through numerous entities (at least one of which, defendant August Group, LLC ("August"), is a Schick-controlled entity), that these fraudulent acts were carried on, without plaintiffs' knowledge or consent, but with the knowledge or acquiescence of one or more of the individual defendants, through the accounts of defendant ZAC – the primary Fishman Entity into which plaintiffs paid, invested and guaranteed upwards of $7-10 million – and the other entity defendants or their affiliates, all while Schick was awaiting sentencing under a prior indictment.

8.   Plaintiffs have recently learned from defendant Fishman's own admissions and the limited documents that he and Freiberg have exhibited that, in one six-month period, Fishman and Schick fraudulently and criminally transferred more than $10 million between the accounts of ZAC (controlled by Fishman) and August (controlled by Schick).

9.   Accordingly, in this action, plaintiffs seek, *inter alia*: (a) a full accounting of (i) the funds they have paid to or invested with Fishman, their joint venture and the various Fishman Entities; (ii) Fishman's use, investment and/or misappropriation thereof; (iii) the ownership interests plaintiffs and the various defendants hold in the joint venture and the various Fishman Entities; (iv) all investments or

acquisitions made by Fishman, ZAC and any other defendant (directly or indirectly), including production of all of defendants' books and records reflecting the investments made by plaintiffs and others in Fishman and the Fishman Entities and the investments made and held by them; and (b) to restrain and enjoin Fishman and all defendants from (i) spending any money, (ii) transacting any business in, making any sales or acquisitions of any property, and/or (iii) incurring any indebtedness by, or compromising any indebtedness of, any of the defendants.

## **Parties**

10.   Plaintiff PRM Realty Group, LLC is a limited liability company organized under the laws of the state of Illinois, with its principal place of business located at 150 North Wacker Drive, Chicago, Illinois.

11.   Plaintiff PRM Nursing Home, LLC is a limited liability company organized under the laws of the state of Illinois, with its principal place of business located at 150 North Wacker Drive, Chicago, Illinois

12.   Plaintiff Morris is a citizen of the state of Illinois.

13.   Upon information and belief, defendant Steven Fishman is a citizen of the state of Pennsylvania.

14.   Upon information and belief, defendant Steven Freiberg is a citizen of the state of Pennsylvania.

15.   Upon information and belief, defendant Arnold R. Whitman is a citizen of the state of Georgia.

16.   Upon information and belief, defendant Anthony
Zingarelli is a citizen of the state of Pennsylvania.   Upon
information and belief, defendant David Schick, a/k/a David Katz
is a citizen of the state of New York.   (Fishman, Freiberg,
Whitman and Schick are collectively referred to as the
"Individual Defendants" and are responsible for the activities
and management of the Fishman Defendants.)

17.   Upon information and belief, defendant ZA
Consulting, LLC ("ZAC") is a limited liability company organized
and existing under the laws of the state of Pennsylvania, with
its principal place of business located at 101 West Avenue,
Jenkintown, Pennsylvania, and is owned and/or controlled, in
whole or in part, by the Individual Defendants and Diversified
European Holdings, Ltd., an entity organized in the British
Virgin Islands with its registered office in Ramsey, Isle of Man.

18.   Upon information and belief, defendant ZA
Holdings, LLC ("ZAH") is a limited liability company organized
and existing under the laws of the state of Pennsylvania, with
its principal place of business located at 101 West Avenue,
Jenkintown, Pennsylvania, and is owned and/or controlled, in
whole or in part, by the Individual Defendants.

19.   Upon information and belief, defendant Diversified
European Holdings, Ltd. ("DEHL") is organized and existing under
the laws of the British Virgin Islands and has its registered
office in Ramsey, the Isle of Man.   Upon information and belief,
the principal of DEHL is Daniel W. Hill, which is an alias or

alter ego of Fishman.

20.   Upon information and belief, defendant ZAC Properties, LLC ("ZACP") is a limited liability company organized and existing under the laws of the state of Pennsylvania, with its principal place of business located at 101 West Avenue, Jenkintown, Pennsylvania, and is owned and/or controlled, in whole or in part, by the Individual Defendants.

21.   Upon information and belief Formation Capital, LLC ("Formation Capital") is a limited liability company organized and existing under the laws of the state of Pennsylvania, with its principal place of business located at 101 West Avenue, Jenkintown, Pennsylvania, and is owned, in whole or in part, by ZAC and HCCF Management Group, LLC, which is owned and/or controlled, in whole or in part, by the Individual Defendants.

22.   Upon information and belief, defendant FC Investors, LLC ("FC Investors") is a limited liability company organized and existing under the laws of the state of Delaware with its principal place of business located at 101 West Avenue, Jenkintown, Pennsylvania, and is owned and/or controlled, in whole or in part, by the Individual Defendants.

23.   Upon information and belief, defendant FC Properties, LLC ("FCP") is a limited liability company organized and existing under the laws of the state of Delaware with its principal place of business located at 101 West Avenue, Jenkintown, Pennsylvania, and is owned, in whole or in part, by FC Management, Inc. and FC Investors, and is controlled, in whole

or in part, by the Individual Defendants.

    24.  Upon information and belief, defendant Redwood
Capital Advisors, LLC ("Redwood") is a limited liability company
organized and existing under the laws of the state of Delaware
with its principal place of business located at 101 West Avenue,
Jenkintown, Pennsylvania, and is owned and/or controlled, in
whole or in part, by the Individual Defendants.

    25.  Upon information and belief, defendant MobilexUSA,
LLC ("MUSA") is a limited liability company organized and
existing under the laws of the state of Delaware with its
principal place of business located at 101 West Avenue,
Jenkintown, Pennsylvania, and is owned and/or controlled, in
whole or in part, by the Individual Defendants.

    26.  Upon information and belief, defendant Mobilex
Acquisition Group, LLC ("MAG") is a limited liability company
organized and existing under the laws of the state of Delaware
with its principal place of business located at 101 West Avenue,
Jenkintown, Pennsylvania, and is owned and/or controlled, in
whole or in part, by the Individual Defendants.

    27.  Upon information and belief, defendant ZAC Mobilex
Holdings, LLC ("ZACM") is a limited liability company organized
and existing under the laws of the state of Delaware with its
principal place of business located at 101 West Avenue,
Jenkintown, Pennsylvania, and is owned and/or controlled, in
whole or in part, by the Individual Defendants.

    28.  Upon information and belief, defendant Formation

Capital Asset Management, LLC ("FCAM") is a limited liability company organized and existing under the laws of the state of Delaware with its principal place of business located at 101 West Avenue, Jenkintown, Pennsylvania, and is owned and/or controlled, in whole or in part, by the Individual Defendants.

29. Upon information and belief, defendant August Associates, LLC ("August") is a limited liability company organized and existing under the laws of the State of Pennsylvania with its principal place of business located at 101 West Avenue, Jenkintown, Pennsylvania.

30. For purposes of this Complaint, the term Fishman Entities refers, collectively to each and all of ZAC, ZAH, DEHL, Formation Capital, FC Investors, FCP, Redwood, MUSA, MAG, ZACM, FCAM and August.

31. Upon information and belief, defendants John Does 1-25 are persons, as yet unidentified who are or may be part of the fraudulent scheme and conspiracy alleged herein and who have participated in one way or another in the fraudulent inducements and/or misappropriation of plaintiffs' investments and property and/or preparation of inaccurate, inadequate and/or false financial statements, tax returns or other documents instrumental in defendants' fraud alleged herein, and/or who are or may be nominees of Schick.

32. Upon information and belief, defendants XYZ Corporations or Limited Liability Companies 1-25 are entities, as yet unidentified who are or may be part of the fraudulent scheme

and conspiracy alleged herein and who have participated in one way or another in the fraudulent inducements and/or misappropriation of plaintiffs' investments and property and/or preparation of inaccurate, inadequate and/or false financial statements, tax returns or other documents instrumental in defendants' fraud alleged herein.

## Jurisdiction; Venue

33.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332, because there is diversity of citizenship of the parties and the amount in controversy exceeds $75,000.

34.  Venue is proper in this district pursuant to 28 U.S.C. §1391(a) because the claims asserted herein arose in this district, and because some or all of the parties have consented to and designated this District as the venue for any dispute under various agreements.

## Background Facts

35.  Morris is a sophisticated and experienced developer of and investor in real estate, both throughout the United States and internationally.  Morris conducts most, but not necessarily all, of his development and investment activities through PRM and through various related entities specifically engaged in the acquisition and development of real estate.

36.  Like many real estate investors, Morris frequently enters into joint ventures with other investors and/or developers in order to explore and develop new business opportunities that

will complement his role with PRM.

37.   Fishman, by contrast, represented himself to
Morris as experienced in the health care industry, with access to
investment opportunities for the acquisition of operating health
care companies and related health care real estate.

**The Parties' Relationship**

38.   Morris first met Fishman in New York City in 2001
and shortly thereafter, at which meetings they defined their
relationship.   During those meetings, Fishman told Morris that he
previously had acquired a company, ZAC, through which he was
investing in and acquiring operating health care companies,
companies that provided professional services to health care
companies and health care-related real estate.

39.   Fishman sought Morris' involvement in a joint
venture in which they would be equal partners and in which Morris
would contribute substantial funds as well as his real estate
experience, his superior access to capital (both through
institutional investors and introductions to wealthy
individuals), and Fishman would supply financing and acquisition
opportunities in the foregoing fields.

40.   Fishman assured Morris that he owned eighty-
percent (80%) of ZAC and that, in partial consideration for
Morris' investment and participation in the joint venture,
Fishman would convey to Morris half of Fishman's interest in, or
40 percent of, ZAC.

41.   In July 2001, Fishman and Morris agreed to and did

enter into a joint venture (the "Joint Venture"), pursuant to
which they agreed, among other things, that:

(a) Morris would commit to invest up to approximately
$4.2 million in ZAC, and perhaps additional funds to such other
entities and for such other projects as they agreed to form from
time-to-time in furtherance of the Joint Venture;

(b) Fishman was to, *inter alia*, convey to Morris half
of Fishman's 80% interest in ZAC (and such of the other Fishman
Entities, whether then existing or thereafter formed), and they
would be equal – 50/50 – partners in each Joint Venture project
and would share the profits and losses on that basis, unless
otherwise agreed;

(c) Fishman would be the "managing partner" of the
Joint Venture, although he would be obligated to provide Morris
with advance notice of any investment by the Joint Venture and
obtain Morris' advance consent to investments, sales or
acquisitions, and the admission of any new partners or venturers
to the Joint Venture or any Fishman Entity through which the
Joint Venture may act;

(d) Fishman, as the "managing partner" of the Joint
Venture, was to prepare, or cause to be prepared, accurate tax
returns, financial statements and entity agreements – *e.g.* a
joint venture agreement and such other agreements (such as
partnership agreements or limited liability company operating
agreements) that would accurately reflect and memorialize the
parties' agreements, their interests in the Joint Venture and the

Fishman Entities through which the Joint Venture acted, and the sales, acquisitions and other transactions of such entities; and

(e) Fishman at all times owed plaintiffs (and all other investors) a fiduciary duty.

42.   In furtherance of their Joint Venture, plaintiffs funded their investments as and when they were required or called upon by Fishman to do so, and they provided numerous guarantees of performance and indebtedness on behalf of the Joint Venture and the Fishman Entities.  Upon information and belief, Fishman and the Individual Defendants informed Morris that they were calling on his commitment for, e.g. the Joint Venture or ZAC, but would divert such funds to other Fishman Entities, and without crediting plaintiffs therefor.

43.   In July 2001, Morris and Fishman agreed that the Joint Venture would act through two previously formed Fishman Entities (Formation Capital and Commercial Capital Formation, LLC d/b/a Formation Capital Realty) to carry out certain objectives of the Joint Venture.  Formation Capital was to serve as the Joint Venture's health care real estate merchant bank operating in the United States and internationally, and Formation Capital Realty was to serve as the Joint Venture's vehicle for its real estate brokerage business.

44.   Fishman and Morris agreed that all decisions relating to the Joint Venture – whether undertaken through ZAC, Formation Capital, Formation Capital Realty or otherwise – were to be subject to Morris' prior consent, and each partner was

committed to:

> [f]ull disclosure, no self-dealing, each side
> commits to good faith, fair dealing, open
> book in detail, and full disclosure on an on-
> going basis with all accounting and tax
> records, at the corporate, deal and personal
> levels on an on-going basis, as we will be
> constantly making commitments, both amongst
> ourselves and to third parties.

**The Beverly Deal**

45.  Six months later, in January 2002, Fishman and the
Individual Defendants coordinated the largest investment in which
they would become involved together: the Beverly deal.  On
January 8, 2002, Fishman, on behalf of the Joint Venture, and
acting through one or more of the Fishman Entities or affiliates
thereof, acquired certain nursing and retirement facilities and
related assets (the "Beverly Assets") from Beverly Enterprises-
Florida, Inc. and other related entities, for a total purchase
price of $177.5 million, but having a market value of
approximately $250 million.

46.  In the Beverly deal, the Fishman Entities acquired
approximately 53 nursing homes that they then leased-back to the
seller, in what is called a "purchase and lease-back."  Fishman
told Morris that this transaction would generate cash flow of
approximately $2 million per month.

47.  The Beverly deal was a significant acquisition and
the investors therein included, among others, the Individual

Defendants and Fishman Entities, plaintiffs and various institutional and other wealthy investors, some of the more substantial of whom had been introduced in good faith to Fishman by Morris.

48.   As a result of Beverly, Fishman, Morris and PRM became entitled to receive significant fees for their work finding, brokering and structuring the transaction, and they were to receive substantial profits and cash flow.  And, because of the ownership structure of ZAC and the other Fishman Entities involved in Beverly (and the dual tiers of plaintiffs' ownership interest), plaintiffs stood to receive the major share of the profits and fees that were to flow through Formation Capital (and its related and affiliated entities), ZAC and FCAM.  With respect to Beverly, Morris and Fishman specifically agreed that:

> Morris and Fishman have equal and joint control over their pooled assets herein, although *vis a vis* the overall deal, Fishman has control,...; Fishman has fiduciary obligations to inform Morris of major decisions, no self-dealing, and to protect our joint collective investments herein.

**The Genesis and Mariner Deals**

49.   After Fishman concluded the Beverly deal, he caused the Joint Venture to make two similar deals, named Genesis and Mariner.  Each of these deals involved the acquisition of approximately 20-25 nursing homes and, like the Beverly deal, were purchase and lease-backs of occupied properties, and were expected to generate substantial monthly

cash flow.

**The MRDG Deal**

50.   In July 2002, Fishman and the Individual Defendants orchestrated another deal – the MRDG, LLC deal.  MRDG was to be engaged in the development and financing of low income and so-called Section 8 housing developments throughout the United States and the U.S. Virgin Islands (for the benefit of not-for-profit housing authorities).  MRDG is owned (or was to be owned) 50% by PRM and 50% by Commercial Formation Capital, LLC (d/b/a Formation Capital Realty ("CFC")).  ZAC owned 90% of CFC; and plaintiffs owned 40% of ZAC.

51.   Plaintiffs were the majority owner of MRDG.

52.   Fishman, the Individual Defendants and the Fishman Entities, however, disregarded plaintiffs' ownership interest in MRDG.

**The Mobilex Deal**

53.   The Mobilex deal was somewhat different.  In the Mobilex deal, the Joint Venture, again acting through one or more of the Fishman Entities, acquired Mobilex, a merchandising company that sold products to the long-term health care industry.

54.   Prior to making the Mobilex acquisition, which acquisition was brought to Fishman by Schick, Fishman had represented to Morris that the company was generating annual revenues of $60 million, and net operating income of $5 million per year.

55.   Despite plaintiffs' multi-million-dollar

investment in the Joint Venture, and despite the significant cash flows that were to be generated for the Joint Venture by the Beverly, Genesis, Mariner, Mobilex and MRDG projects, plaintiffs received little, if any net distributions therefrom.  Indeed, Fishman, Freiberg and Zingarelli repeatedly complained to Morris that the foregoing projects were not profitable, and they called on Morris to invest additional capital in order to help keep the Joint Venture solvent.

**Plaintiffs Seek Accountings from Fishman**

56.  For several years, plaintiffs have sought an accounting from Fishman and the Individual Defendants with respect to their investment – both to have Fishman acknowledge (on behalf of the Joint Venture and the various Fishman Entities) (a) the magnitude of plaintiffs' cash investment, as well as (b) the ownership that plaintiffs had acquired by reason of their various investments.  In addition, plaintiffs sought an accounting to understand the nature and extent of Fishman's acquisitions and other transactions, and the entity or entities that were involved in such transactions.

57.  Fishman and the other defendants concealed the fact and date of the closing from Morris and refused to timely provide plaintiffs with copies of the transaction documents for the Beverly deal, a $177.5 million transaction, which included investors such as Salomon Smith Barney and Blackacre Bridge Capital, LLC, entities that would not have been involved in such a transaction absent proper documentation.

Page 19

58.   Plaintiffs' need for this information was simple: for many years prior to the commencement of this action, Fishman and various other defendants, including Freiberg and Schick, failed to provide plaintiffs with the information to which they were entitled, as 50 percent owners of the Joint Venture and as investors in the various deals (*i.e.* one or more of the Fishman Entities) themselves.  For years, Morris demanded an accounting and pleaded with Fishman and the Individual Defendants that his failure and refusal to provide Morris with accurate books and records relating to the various entities and the transactions that had been entered into, was unlawful, wrong, unacceptable and in violation of their agreements.

59.   From the time the Joint Venture was formed, the Joint Venture and/or the Fishman Entities had acquired assets or made investments worth more than $350 million.  Yet, Fishman refused to provide Morris with such documents as would have to have been provided at the closing of such investments – such as documents (a) identifying the parties to the transactions, and the shareholders, partners or members of such entities (especially plaintiffs), (b) establishing that such entities had the power and authority to enter into the transaction, and (c) setting forth the terms, conditions and price of the transaction, such as a purchase and sale agreement and closing statements. Fishman also refused to provide Morris with copies of the financial statements and tax returns for the Joint Venture and the various Fishman Entities.

60.   By effectively refusing to provide such information, Fishman was able to – and did – conceal the fact that he and the other defendants had (a) misappropriated plaintiffs' investment; (b) used plaintiffs' money for purposes other than had been approved by plaintiffs; (c) taken plaintiffs' money and demanded that plaintiffs guarantee (as plaintiffs' did guarantee) indebtedness of the Joint Venture or one or more of the Fishman Entities, while also concealing the fact that Fishman and the other defendants had not recorded plaintiffs' ownership interests in the Joint Venture or the Fishman Entities and/or had clandestinely and surreptitiously re-sold a substantial portion of plaintiffs' interests in the Joint Venture to others (including Schick's nominees).

61.   Shortly before the date of this Complaint, Fishman and the other defendants agreed to provide plaintiffs with some – but not all – of the documents and materials that plaintiffs had been demanding since the establishment of the Joint Venture.  At the same time, Fishman and Freiberg agreed to and did meet with certain of plaintiffs accountants in a feigned effort to make it appear as if they would explain, and answer questions regarding, the documents and investments.

**Fishman's Inadequate, False
and Fraudulent Record-keeping**

62.   Upon information and belief, and among other things:

(a) the books and records Fishman and the Individual Defendants allowed to be exhibited to plaintiffs do not reflect

plaintiffs' equity interest in the Joint Venture, ZAC or the Beverly deal. Such books and records, however, reveal partners and members unknown to plaintiffs and reveal such partners and members holding interests in the various Fishman Entities that could only have been transferred or conveyed by plaintiffs, although plaintiff have never transferred or conveyed, or approved the transfer or conveyance, of any of their interests held in or through the Joint Venture;

(b) ZAC's tax returns for 2002 fail to show Morris or any of the plaintiffs as holding any interest in ZAC's profits or losses, despite their Joint Venture agreement;

(c) ZAC's books and records as well as its financial statements for the years ended December 2000, 2001 and 2002 reflect significant accumulated deficit, substantial debt, liabilities substantially in excess of current and total assets, and recurring net losses – contrary to Fishman's representation and warranty to Morris in July 2001 that ZAC was solvent at that time, and despite the substantial income and profits that was or should have been generated by the Beverly deal and paid to plaintiffs;

(d) ZAC has never issued financial statements, although Fishman was required to do so under the Joint Venture agreement with plaintiffs;

(e) Fishman's accountants have withheld issuing any financial statements for ZAC because they have not been paid to complete the necessary audit, and such audit would require the

accountants to issue a "going concern" opinion due to ZAC's financial condition.

63.   But the information that was not revealed by Fishman's books and records is almost eclipsed by the patent fraudulent and criminal conduct that is revealed by Fishman's records.

**Fishman's Records Reveal Fishman's and Schick's Conspiracy to Misappropriate Morris' and Others' Funds Invested in the Joint Venture and ZAC**

64.   The books and records the Individual Defendants maintained for ZAC – the main Fishman Entity through which the activities of the Joint Venture were conducted – establish that Fishman, Freiberg, Whitman and Schick used ZAC and other Fishman Entities (or permitted them to be used) in connection with their unlawful and criminal plan and scheme to clandestinely move and transfer extremely large amounts of cash in and out of ZAC.

65.   For example, according to general ledger detail only recently made available to plaintiffs, there are an unusual number of large dollar receipts and disbursements made between ZAC and August (controlled by Schick, and which has no business relationship with ZAC, Fishman or any of the Fishman Entities). Fishman's records reveal that, during the month of January 2003 alone, there were more than 25 transfers between ZAC and August, totaling more than $2 million.  Many of these transfers were made within days of each other.  For example, on January 16, 2003, ZAC transferred $150,000 to August, as it did again the next day, on January 17.  On January 17, August twice transferred $150,000 to

ZAC, and on January 21, August made two transfers of $150,000 each and one transfer of $200,000; on January 21, ZAC transferred $200,000 and $150,000 to August.

66.   This pattern apparently continued throughout the year, in varying amounts each month, although the dollar-size of the transactions increased.   For example, while the largest such transfer in January 2003 was $250,000, by June 2003, many transfers exceeded $500,000, and at least one transfer, on June 11, 2003, was for $1.65 million.

67.   These transfers between ZAC and Schick are recorded in ZAC's ledger under the category "general" – that is, they are not even attributed or attributable to any particular deal, transaction or investment.

68.   Upon information and belief, neither Schick nor August is or should be an investor in or otherwise entitled to receive any share of the income, profits or losses of ZAC or any Fishman Entity in which plaintiffs have any interest.

69.   Upon information and belief, and according to the books and records maintained by Fishman and Freiberg, defendants transferred more than $10 million to Schick and/or August in the 6-month period January to June 2003.

70.   Upon information and belief, Fishman, Schick, Freiberg and Whitman received all or a part of the $10 million that was transferred between ZAC and August, and they misappropriated and used all or a portion of such $10 million for their own personal aggrandizement and benefit.

**Defendants' Diversion of Funds to and Through Redwood**

71.   Fishman's records also revealed that substantial funds were transferred into and out of defendant Redwood without any legitimate business purpose.   Upon information and belief, Redwood, which is owned or controlled by Zingarelli, as a nominee for Fishman, has no legitimate purpose other than to serve as a conduit for the transfer of Joint Venture funds to one or more of the Fishman Entities, facilitating the misappropriation and diversion of such funds to defendants.   Upon information and belief, Fishman took an option to acquire an 80% interest in Redwood (half of which, pursuant to the Joint Venture agreement, would have been plaintiffs), obtained a $2 million letter of credit, secured by this option, and then borrowed against the letter of credit (with Schick and friends of Schick).   The proceeds of that transaction – more than $2 million – have evaporated, and are not traceable on the books and records of any of the Fishman Entities.

72.   At the same time as defendants were misappropriating and diverting the assets of ZAC and the Joint Venture – plaintiffs' property – the Individual Defendants were falsely reporting to Morris that ZAC and the Joint Venture had insufficient funds with which to pay plaintiffs the profits and other distributions to which they were entitled under their various agreements and investments.

73.   Despite repeated requests, Fishman has failed and refused to provide Morris with any operating reports or financial

statements for the Beverly transaction or any other transaction or investment made by, through or in any way in connection with the Joint Venture or the Fishman Entities.

74.   When Morris and Fishman first entered into their Joint Venture relationship, Fishman represented that ZAC was solvent.

75.   Upon information and belief, ZAC was not then, and is not now, solvent.

76.   Fishman intentionally concealed from Morris Schick's true (dual) identity and the nature and level of his dealings and transactions, and those of the Fishman Entities, with Schick, which ultimately were determined to be illegal.

77.   Had Fishman or any of the Individual Defendants disclosed Schick's true identity and his background, including Schick's prior indictment, plaintiffs never would have invested with Fishman and never would have formed the Joint Venture.

78.   Neither Fishman nor any other defendant is capable of managing, nor is any of them fit to manage the affairs of the Joint Venture, ZAC or any of the Fishman Entities in a manner that is lawful and consistent with their respective duties (fiduciary and otherwise).

79.   Each of the Fishman Entities named as a defendant in this action is owned or controlled by Fishman, or is an instrumentality through which defendants have effectuated their fraud and misappropriation of plaintiffs' property, income and assets.

80.   Each of the defendants herein either owed plaintiffs a fiduciary duty or facilitated the breach by each other defendant of their respective breaches of their fiduciary duties.

81.   Plaintiffs have no adequate remedy at law.

### Count I

### (Fraud)

82.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 81 of this Complaint as though fully set forth hereat.

83.   By reason of the foregoing, Fishman fraudulently induced Plaintiffs to enter into the Joint Venture.

84.   The foregoing statements made by Fishman to Morris prior to Morris' investment in and with Fishman and the Fishman Entities were false when made and were made with the purpose and intent of securing Morris's investment.

85.   By reason of the foregoing, plaintiffs are entitled to an order and judgment of this Court directing defendants to pay to plaintiffs and/or to one or more of the Fishman Entities, all of the sums diverted and misappropriated by them.

86.   By reason of the foregoing, plaintiffs are entitled to compensatory damages in an amount as shall be proven at trial, together with an award of punitive damages.

## Count II

### (Reformation)

87.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 86 of this Complaint as though fully set forth hereat.

88.   By reason of the foregoing, plaintiffs are entitled to an order and judgment of this Court reforming the various Joint Venture agreements and other documents reflecting the assets, liabilities, owner interests and interest in the profits and losses of the Joint Venture and each of the Fishman Entities, so that such documents and instruments accurately reflect and record plaintiffs' ownership interests in and to the Joint Venture, the Fishman Entities and the assets, profits and losses thereof.

## Count III

### (Breach of Joint Venture; Fiduciary Duty; Accounting)

89.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 88 of this Complaint as though fully set forth hereat.

90.   By reason of the foregoing, Fishman and each of the Individual Defendants owed and owe plaintiffs a fiduciary duty.

91.   The Individual Defendants and the Fishman Entities, breached that fiduciary duty by, among other things, failing to prepare and maintain adequate books and records for each of the Fishman Entities and with respect to plaintiffs'

investment and equity in ZAC, the various Fishman Entities, and the Beverly, Genesis, Mariner and Mobilex assets.

92.   Plaintiffs have been damaged and harmed by defendants' conduct.

93.   Accordingly, plaintiffs are entitled to a judgment of this Court:

(a) directing defendants to deliver to plaintiffs all of the books and records of Fishman and each of the Fishman Entities; and

(b) directing defendants to account to plaintiffs as to (i) all sums invested by plaintiffs, (ii) all investments made by Fishman and/or the Fishman Entities, (iii) all sums, fees payments or other consideration or things of value received by defendants in respect of or in connection with the activities, investments or assets of Fishman or any of the Fishman Entities, (iv) each and every holder of any equity, partnership or other interest in each of the Fishman Entities, their activities, investments or assets, (v) all transactions between or among any of the Fishman Entities and Fishman and/or Schick (or any and all entities owned or controlled by Schick, directly or indirectly), and (vi) any and all investments, partnerships, ventures or other activities or relationships between or involving Fishman (and/or one or more of the Fishman Entities) and Schick; and

(c) upon such accounting to pay to plaintiffs such sums as shall be due and owing to plaintiffs and/or to transfer to plaintiffs such interests in the Joint Venture and the Fishman

Page 29

Entities to which they are justly entitled.

**Count IV**

**(Facilitation and Participation in Breach of Fiduciary Duty)**

94.  Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 93 of this Complaint as though fully set forth hereat.

95.  By reason of the foregoing, Fishman and each of the Individual Defendants knew or should have known that each of them owed a fiduciary duty to plaintiffs.

96.  Each of the Individual Defendants breached that fiduciary duty by, among other things, failing to prepare and maintain adequate books and records for each of the Fishman Entities and with respect to plaintiffs' investment and equity in ZAC, the various Fishman Entities, and the Beverly, Genesis, Mariner and Mobilex assets and by failing to inform plaintiffs' of Schick's involvement with the Fishman Entities and their conduct of illegal check kiting activities in and through ZAC.

97.  Plaintiffs have been damaged and harmed by defendants' conduct.

98.  Accordingly, plaintiffs are entitled to an award of damages against each of the Individual Defendants in an amount to be proven at trial, together with an award of punitive damages.

## Count V

### (Injunction)

99.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 98 of this Complaint as though fully set forth hereat.

100.   By reason of the foregoing, plaintiffs are entitled to an order and judgment of this Court restraining and enjoining Fishman from (a) acting on behalf of ZAC or any of the Fishman Entities, (b) taking any further actions on behalf of any of the Fishman Entities, or with respect to any asset, activity, venture, investment of any Fishman Entity, without the prior approval of plaintiffs or an order of this Court, and (c) making any investment, borrowing money, incurring or compromising any indebtedness, issuing any securities or otherwise transacting any business with or on behalf of ZAC, the Joint Venture or any Fishman Entity.

## Count VI

### (Constructive Trust)

101.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 100 of this Complaint as though fully set forth hereat.

102.   By reason of the foregoing, plaintiffs are entitled to the imposition of a constructive trust upon the assets of the Joint Venture and each of the Fishman Entities and an order of this Court transferring such assets to the Joint Venture, and allocating the ownership and equity therein in

accordance with the Joint Venture agreement.

**WHEREFORE**, plaintiffs demand judgment of this Court as follows:

       a.    On Count One, compensatory damages in an amount as shall be proven at trial and an award of punitive damages;

       b.    On Count Two, reformation of such documents and instruments as shall be necessary to properly reflect plaintiffs' ownership interests and interest in the profits, losses and capital of the Joint Venture and each of the Fishman Entities;

       c.    On Count Three a declaration that Fishman and defendants have violated the Joint Venture agreement, an accounting and, upon such accounting, an order directing defendants to pay such sums as this Court shall declare are due and owing to plaintiffs;

       d.    On Count Four, compensatory damages in an amount as shall be proven at trial and an award of punitive damages;

       e.    On Count Five, an injunction restraining and enjoining Fishman from (a) acting on behalf of ZAC or any of the Fishman Entities, (b) taking any further actions on behalf of any of the Fishman Entities, or with respect to any asset, activity, venture, investment of any Fishman Entity, without

the prior approval of plaintiffs or an order of this Court, and (c) making any investment, borrowing money, incurring or compromising any indebtedness, issuing any securities or otherwise transacting any business with or on behalf of ZAC, the Joint Venture or any Fishman Entity;

f. On Count Six, the imposition of a constructive trust upon the assets of each of the entity-defendants and an order of this Court transferring such assets to the Joint Venture, and allocating the ownership and equity therein in accordance with the agreement of Morris and Fishman; and

g. Such other and further relief as this Court shall deem just and proper.

Dated: April 26, 2004          **ROOSEVELT & BENOWICH, LLP**


By: /S/_____
Leonard Benowich (LB-6129)

**BRICCETTI, CALHOUN & LAWRENCE, LLP**
**Attorneys for Plaintiffs**

Page 33