Leonard Benowich (LB-6129)
ROOSEVELT & BENOWICH, LLP
1025 Westchester Avenue
White Plains, New York 10604
(914) 946-2400

Vincent Briccetti
BRICCETTI, CALHOUN & LAWRENCE, LLP
81 Main Street
White Plains, New York 10601
(914) 946-5900

**Attorneys for Plaintiffs**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x

PRM REALTY GROUP, LLC, et al.,                04 Civ. 3150 (BSJ)(MHD)

                Plaintiffs,

    -against-

STEVEN E. FISHMAN, et al.,

                Defendants.

-----------------------------------x

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS TO DISMISS BASED ON A PURPORTED ARBITRATION AGREEMENT

#### Preliminary Statement

       Plaintiffs respectfully submit this memorandum of law in opposition to the motions by three defendants seeking to dismiss the Complaint on the grounds that there is an arbitration agreement.

       The moving defendants – Steven Fishman, ZAC Consulting, LLC and ZAC Properties, LLC – move to dismiss the Complaint on

the grounds that they have entered into an agreement with two of the plaintiffs – PRM Realty Group, LLC and Peter Morris – which, they claim, requires arbitration of some (but by no means all) of the claims asserted in the Complaint.

Defendants are wrong.  The "Assignment of Economic Interest" agreement ("Agreement"), which contains the purported arbitration clause, actually contains a provision which gives any party thereto seeking resolution of a dispute thereunder, <u>the right to elect to arbitrate such dispute, but not the duty to arbitrate</u>.

The dispute resolution clause in the Agreement is not a mandatory arbitration clause.

The Agreement does not contain an agreement pursuant in which the parties agreed to mandatory arbitration of their disputes; plaintiffs did not agree to mandatory arbitration. Having elected to commence and proceed with this action, plaintiffs cannot be compelled to arbitration, and the Complaint should not be dismissed.

**Background Facts**

The Agreement, which was negotiated by sophisticated counsel on both sides (*see* Agreement §13(a)), contains several provisions which are relevant and important to the determination of this motion.

**First**, section 13(l) provides that the Agreement is to be governed by and construed in accordance with New York law. Def's Ex. A, at 10.

**Second**, section 13(k) provides that each of the parties submitted to the non-exclusive jurisdiction of this Court:

> SUBMISSION TO JURISDICTION.  SUBJECT TO THE PROVISIONS OF SECTION 13(G), EACH OF THE PARTIES HEREBY SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK FOR THE PURPOSES OF ALL LEGAL PROCEEDINGS ARISING OUT OF OR RELATING TO THIS AGREEMENT. EACH OF THE PARTIES HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF THE VENUE OF ANY SUCH PROCEEDING BROUGHT IN SUCH A COURT AND ANY CLAIM THAT ANY SUCH PROCEEDING BROUGHT IN SUCH A COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.

Agreement, at 10, Def's Ex. A (capitalized in original).

**Third**, section 13(g) of the Agreement contains the purported arbitration provision:

> Resolution of Disputes.  Any controversy, dispute or claim (collectively, a "Dispute") among the parties hereto arising out of or relating to this Assignment, or the breach, termination or validity hereof, shall be resolved in accordance with the terms of this

3

Section 13(g).  If there is a Dispute, any
party *may* give written notice to the others
requesting to discuss actions which might be
taken to resolve such Dispute (the "<u>Dispute
Notice</u>").  The parties then shall attempt to
settle such Dispute through good faith
negotiations.  If any Dispute is not resolved
by the parties through negotiation within
thirty (30) days of the delivery of the
Dispute Notice, any of the parties *may* submit
the Dispute to binding baseball-style
arbitration in the State of New York.  The
ruling of the arbitrator shall be final and
non-appealable.  Judgment upon the award made
therein may be entered in any court having
jurisdiction.

Def's Ex. A, at 9 (emphasis added).

**Fourth**, the Agreement contains an integration clause.
*Id*. at §13(I).

The Agreement plainly does not require mandatory
arbitration.  Section 13(g) provides that in the event of a
dispute "any party *may* give written notice" (emphasis added) to
discuss the dispute.  Even after such a discussion is held, the
Agreement does not require mandatory arbitration.  Rather, §13(g)
provides that if the dispute is not resolved within 30 days, "any
of the parties *may* submit the Dispute to binding baseball-style
arbitration in the State of New York." *Id*. (emphasis added).

4

Courts interpreting agreements such as the Agreement have recognized and enforced a party's right, but not his duty, to arbitrate a dispute that is otherwise within the scope of the arbitration clause.

In this case, the purported arbitration clause is too indefinite to be enforced.  The Agreement does not provide in which forum the arbitration is to be held (although the Agreement provides that any arbitration would be in New York, it does not specify whether the arbitration should be held before the AAA, JAMS or any other forum), who the arbitrator is to be, how the arbitrator is to be selected, or what rules should apply to the arbitration process.

The Agreement contains an overarching consent to jurisdiction in New York and to litigation in this Court, and it also contains a waiver of any objections as to venue and *forum non conveniens*. (Agreement, §13(k)) Because the dispute resolution provision (*id*., §13(g)) already provides that an award may be entered in any court having jurisdiction, the provisions of section 13(k) are far more than would be necessary or appropriate, if that section was not intended to be applicable in the event one party to the Agreement elected to litigate, rather than arbitrate, any dispute.

Finally, defendants do not claim that all of the claims asserted against them in this action are subject to arbitration.

(Certainly, there is no contention that all of the claims asserted against all of the parties in this action are arbitrable under the Agreement.)  The purported arbitration clause in the Agreement applies only to a dispute "arising out of or relating to this [Agreement], or the breach, termination or validity hereof."  But the Agreement does not purport to require arbitration of claims that arise with respect to other parties, transactions, deals, investments, or duties.

For these reasons, defendants' motion should be denied in all respects.

**Argument**

**Point I**

**THE AGREEMENT, GOVERNED BY
NEW YORK LAW, DOES NOT CONTAIN
<u>A MANDATORY ARBITRATION CLAUSE</u>**

**A.   The Applicable Standard**

It is settled that whether the parties have entered into an agreement to arbitrate is to be determined by this Court, unless the agreement specifically provides that it is to be determined by the arbitrator.  <u>First Options of Chicago v. Kaplan</u>, 514 U.S. 938, 115 S. Ct. 1920 (1995); <u>In re Salomon, Inc. Shareholders Derivative Litigation</u>, 68 F.3d 554 (2d Cir. 1995); <u>Brown v. Miquens</u>, 2003 WL 1090304, *2 (S.D.N.Y. March 11, 2003).  There is no such provision in the Agreement.  This Court should determine whether these parties have entered into an agreement

6

that requires arbitration of any of the claims asserted in this case.

Defendants' motion, styled as a motion to dismiss the Complaint on the grounds that the purported arbitration agreement divests this Court of subject matter jurisdiction, is misnamed. This Court must have subject matter jurisdiction in order to consider and grant (or deny) defendants' motion. This Court does have subject matter jurisdiction, certainly over these moving defendants, as there is plainly diversity of citizenship and more than $75,000.00 in controversy. Moreover, these defendants have consented to this Court's exercise of jurisdiction over them.

This motion is governed by New York law. The Agreement provides that it is to be governed by New York law. The Supreme Court has held that where, as here, the parties' agreement has a general choice of law provision, that choice of law is to be enforced, Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University, 489 U.S. 468, 109 S. Ct. 1248 (1989), and the chosen state law is not pre-empted by the Federal Arbitration Act.[1] *Id*. Accordingly, this case is governed by New York law, and not the Federal Arbitration Act.

---

[1]    The FAA was designed to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate. Volt, 489 U.S. at 474. "There is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Id*. at 475, *see also, id*. at 478.

The only "motion" available to defendants is not one to dismiss the Complaint, but to seek an order staying this action and/or compelling arbitration.

Under New York law, it is clear that defendants' motion, whatever it is called, is meritless and must be denied.

**B.   The Agreement Contains an Option to Arbitrate**

Numerous courts have recognized and enforced agreements which allow – but do not require – arbitration of disputes.

Parties are free to agree that either party "may" select arbitration as an available method of resolving a dispute, and they are also free not to do so.

Agreements – like the Agreement in this case – which provide parties with the right, but not the duty, to resolve their disputes through arbitration have been upheld and enforced in accordance with their terms, by the courts of New York, *see e.g.* HSBC Bank USA v. National Equity Corp., 279 A.D.2d 251, 719 N.Y.S.2d 20 (1st Dep't 2001)(agreement provided that lender had the right to elect arbitration, "by so electing the lender is not thereby required to submit all disputes between the parties to arbitration"), and by courts in this District. *See e.g.* Brown v. Miguens, 2003 WL 1090304 (S.D.N.Y. March 11, 2003) (Martin, D.J.) ("the intent of the parties was to give the Buyer the option to have issues related to the alleged breach of the non-competition/non-solicitation provision by Defendant Miguens

decided in court"); <u>SATCOM International Group, PLC v. ORBCOMM International Partners, L.P.</u>, 49 F. Supp. 2d 331 (S.D.N.Y. 1999) ("'In the event the parties are unable to agree on the resolution ...either party may remove the claim or controversy for settlement by final and binding arbitration'").

Unlike mandatory arbitration clauses, the Agreement in this case does not state that all disputes "shall" or "must" be resolved by or submitted to arbitration.  Rather, the first sentence of §13(g) (entitled "Resolution of Disputes") provides only that disputes "shall be resolved in accordance with the terms of this Section 13(g)."  Section 13(g) continues on to provide the parties with the option to resolve their disputes through judicial or non-judicial means.

It is a fundamental principle of New York law that a party seeking arbitration has the burden of showing that the parties clearly, expressly and unequivocally agreed to arbitrate their disputes.  <u>TNS Holdings, Inc. v. MKI Securities Corp.</u>, 92 N.Y.2d 335, 339 (NY 1998).  As the New York Court of Appeals has held:

> It is settled that a party will not be compelled to arbitrate, and, thereby, to surrender the right to resort to the courts, absent evidence which affirmatively establishes that the parties expressly agreed to arbitrate their disputes.  The agreement must be clear, explicit and unequivocal and must not depend upon implication or subtlety.

Matter of Waldron, 61 N.Y.2d 181, 183 (NY 1984); Schubtex, Inc. v. Allen Snyder, Inc., 49 N.Y.2d 1, 6 (NY 1979); Matter of Marlene Inds. Corp (Carnac Textiles), 45 N.Y.2d 327, 333-334 (NY 1978); Transit Mix Concrete Corp. v. Local Union No. 282, 809 F.2d 963, 967 (2d Cir. 1987)("[s]ince arbitration is a matter of contract...a party cannot be required to submit to arbitration any dispute which he has not agreed to submit").

It is equally settled under New York law that, when interpreting an agreement (whether a purported arbitration agreement or otherwise), the Court is obligated to read and interpret the entire agreement as a whole, in order to ascertain the parties' intent and to effectuate the parties' general purpose. Westmoreland Coal Co. v. Entech, Inc., 100 N.Y.2d 352 (NY 2003):

> A written contract "will be read as a whole, and every part will be interpreted with reference to the whole; and if possible it will be so interpreted as to give effect to its general purpose....The meaning of a writing may be distorted where undue influence is given to single words and phrases." (*Empire Properties Corp. v. Manufacturers Trust Co.*, 288 N.Y. 242, 248 [1942].

*See also* W.W.W. Associates v. Giancontieri, 77 N.Y.2d 157, 162-63 (NY 1990); Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 572 (NY 2002); Metropolitan Life Ins. Co. v. Noble Lowndes Intern., Inc., 84 N.Y.2d 430 (NY 1994) (the "entire contract must be considered"); Rentways, Inc. v. O'Neill Milk & Cream Co., 308

10

N.Y. 342, 347 (NY 1955); <u>Brown v. Miguens</u>, 2003 WL 1090304, \*3,

*citing* <u>Mastrobuono v. Shearson Lehman Hutton</u>, 514 U.S. 52, 115 S.

Ct. 1212 (1995).

      This latter rule is especially important given the

overriding concern, articulated by the New York Court of Appeals

in <u>TNS Holdings, Inc.</u>, 92 N.Y.2d at 339, that a party will not be

compelled to forego his right to have disputes resolved in court

in the absence of clear evidence that he has agreed in writing to

do so:

> Although arbitration is favored as a matter
> of public policy...<u>equally important is the
> policy that seeks to avoid the unintentional
> waiver of the benefits and safeguards which a
> court of law may provide in resolving
> disputes.  Indeed, unless the parties have
> subscribed to an arbitration agreement it
> would be unfair to infer such a significant
> waiver by anything less than a clear
> indication of intent</u>. [*Emphasis added;
> internal citations omitted*.]

*See also* <u>Matter of Marlene Industries Corp</u>., *supra*.

      In the absence of a clear agreement to do so, parties

cannot be forced to arbitrate, and an agreement to arbitrate

requires a clear and unequivocal manifestation of an intention to

arbitrate, because it involves the surrender of the right to

resort to the courts.  <u>Matter of Waldron</u>, *supra;* <u>Matter of Acting</u>

<u>Superintendent of Schools of Liverpool Cent. School District</u>, 42

N.Y.2d 509, 512 (NY 1977).  Even Federal law, were it applicable

in this case, would not impose on plaintiffs a duty to arbitrate

any claims.  "[F]ederal law 'does not require parties to arbitrate when they have not agreed to do so'; it simply requires courts to enforce an arbitration clause, like any other contract clause, in accordance with its terms. [*Citing* <u>Volt</u>, *supra*, 498 U.S. 468, 478]. '[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Id*., *quoting* <u>Leadertex, Inc. v. Morganton Dyeing & Finishing Corp</u>., 67 F.3d 20, 27 (2d Cir. 1995).

In this case, the parties did not agree to mandatory arbitration of their disputes.  Rather, the Agreement plainly provides for permissive arbitration:  "any party *may* give written notice to the others requesting to discuss actions which might be taken to resolve such Dispute" (emphasis added).  Even if a party were to give such written notice, and the meeting or discussion were to be held, if the dispute is not resolved within 30 days, "any of the parties *may* submit the Dispute to binding baseball-style arbitration in the State of New York" (emphasis added). *See* <u>SATCOM International Group, PLC</u>, 49 F. Supp. 2d at 333-334.

In <u>SATCOM International Group, PLC</u>, *supra*, the parties' agreement contained language similar to the language in the Agreement in this case.  In the event of a dispute, the parties were to "use all reasonable efforts to resolve" such dispute within 60 days.  In the event they were unable to resolve the dispute, "either party *may* remove the claim or controversy for

12

settlement by final and binding arbitration..." 49 F. Supp. 2d at
334 (emphasis added).  Judge Cote recognized that this language
conferred on the parties an option to elect arbitration, but not
a duty to arbitrate.  49 F. Supp. 2d at 338.

 The repeated use in section 13(g) of the word "may"
rather than the word "shall" is meaningful.  May and shall are
familiar to draftsmen and lawyers, and they do not mean the same
thing.  "May" is discretionary; "shall" is mandatory and
directive.

 The Agreement simply does not provide for mandatory
arbitration.  What the Agreement does provide is the right of a
party to elect whether to commence arbitration or litigation;
nothing in the Agreement confers on the non-initiating party the
right to force the initiating party to pursue resolution of the
dispute in another forum.  As in SATCOM International Group, PLC,
*supra*, and Brown, *supra*, the option to select the forum for
resolution of the dispute rests with the party initiating the
process.  In this case, plaintiffs initiated the process by
filing this action.  Plaintiffs cannot be compelled to arbitrate
any of the claims asserted herein.

 A party initiating resolution efforts could seek to
follow the arbitration route, and he could do so by electing to
give the permissive Dispute Notice and then commencing
arbitration.  Alternatively, the party initiating the resolution

efforts is also free to seek to resolve the differences in Court, as plaintiffs have done in this case.  This is supported by the provisions of §13(k), which contain a full consent to jurisdiction in New York, choice of New York law, forum selection and waiver of venue and forum *non conveniens* provisions, all of which would be superfluous if §13(g) were a mandatory, and exclusive provision.

Under settled New York law, the parties are free to determine the manner in which arbitration is to be conducted, or not.  Astoria Medical Group v. Health Ins. Plan, 11 N.Y.2d 128 (NY 1962).  The Court's role is limited to interpretation and enforcement of the terms agreed to by the parties; it does not include the rewriting of their contract and the imposition of additional terms. *Id*.  The Court should not, and may not, rewrite the parties' Agreement, especially where, as here, they are sophisticated parties represented by sophisticated counsel. Collins & Aikman Products Co. v. Building Systems, Inc., 58 F.3d 16, 20 (2d Cir. 1995).

Even if the arbitration clause were mandatory – and it is not – arbitration under the Agreement cannot be compelled because the Agreement is indefinite, as it does not provide for such critical factors as: (1) what rules are to govern the arbitration (*e.g.* AAA, JAMS or otherwise), (2) who the arbitrator is, and (3) how the arbitrator may or can be selected.  This

Agreement, like any other agreement or contract, cannot be enforced in the absence of a meeting of the minds of the parties. Martin Delicatessen v. Schumacher, 52 N.Y.2d 105 (NY 1981); Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp., 74 N.Y.2d 475 (NY 1989).  "Even if the parties believe they are bound, if the terms of the agreement are so vague and indefinite that there is no basis or standard by which terms may be made certain, then there is no enforceable contract." Winston v. Boisclair, 1991 WL 150613 (S.D.N.Y. July 31, 1991); *citing* Candid Productions, Inc. v. International Skating Union, 530 F. Supp. 1330 (S.D.N.Y. 1982) (Weinfeld, J); Brown & Guenther v. North Queensview Homes, Inc., 18 A.D.2d 1025, 239 N.Y.S.2d 48 (2d Dep't 1963).

## Conclusion

The Agreement does not contain a mandatory arbitration provision.  Plaintiffs are under no duty to arbitrate any of the claims asserted in their Complaint in this action.

Even if the Court were inclined to compel arbitration, the arbitration provisions are void and unenforceable as indefinite (because, *inter alia*, the Agreement does not designate an arbitrator and does not designate how an arbitrator shall be selected), and the Complaint contains many claims that are plainly beyond the scope of those claims which otherwise would be arbitrable under the Agreement.

15

In their motion, defendants made no effort to review
the language of the purported arbitration clause, and they made
no effort to analyze which of the claims asserted against them
would – or would not – be subject to arbitration, if there were
a duty to arbitrate.

Defendants' blunderbuss motion should be denied in all
respects, and defendants should be directed to answer the
Complaint.

Dated:      November 1, 2004          **ROOSEVELT & BENOWICH, LLP**


                                       By:/s/_____
                                       Leonard Benowich (LB6129)
                                       **Attorneys for Plaintiff**

16

## Table of Authorities

Cases                                                            Page

Astoria Medical Group v. Health Ins. Plan,                       14
     11 N.Y.2d 128 (NY 1962)

Brown & Guenther v. North Queensview Homes, Inc.,               15
     18 A.D.2d 1025 (2d Dep't 1963)

Brown v. Miquens, 2003 WL 1090304
     (S.D.N.Y. March 11, 2003)                                  6, 8,
                                                                10

Candid Productions, Inc. v. International Skating Union,        15
     530 F. Supp. 1330 (S.D.N.Y. 1982)

Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.,        15
     74 N.Y.2d 475 (NY 1989)

Collins & Aikman Products Co. v. Building Systems, Inc.,        14
     58 F.3d 16 (2d Cir. 1995)

First Options of Chicago v. Kaplan,                             6
     514 U.S. 938 (1995)

Greenfield v. Philles Records, Inc.,                            10
     98 N.Y.2d 562 (NY 2002)

HSBC Bank USA v. National Equity Corp.,                         8
     279 A.D.2d 251 (1st Dep't 2001)

In re Salomon, Inc. Shareholders Derivative Litigation,        6
     68 F.3d 554 (2d Cir. 1995)

Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.,        12
     67 F.3d 20 (2d Cir. 1995)

Martin Delicatessen v. Schumacher, 52 N.Y.2d 105 (NY 1981) 15

Mastrobuono v. Shearson Lehman Hutton,                         11
     514 U.S. 52, 115 S. Ct. 1212 (1995)

Matter of Marlene Inds. Corp (Carnac Textiles),                10,
                                                                11
     45 N.Y.2d 327 (NY 1978)

17

| Cases | Page |
|---|---|
| Matter of Acting Superintendent of Schools of Liverpool Cent. School District, 42 N.Y.2d 509 (NY 1977) | 11 |
| Matter of Waldron, 61 N.Y.2d 181 (NY 1984) | 10, 11 |
| Metropolitan Life Ins. Co. v. Noble Lowndes Intern., Inc., 84 N.Y.2d 430 (NY 1994) | 10 |
| Rentways, Inc. v. O'Neill Milk & Cream Co., 308 N.Y. 342 (NY 1955) | 10 |
| SATCOM International Group, PLC v. ORBCOMM International Partners, L.P., 49 F. Supp. 2d 331 (S.D.N.Y. 1999) | 9, 12, 13 |
| Schubtex, Inc. v. Allen Snyder, Inc., 49 N.Y.2d 1 (NY 1979) | 10 |
| TNS Holdings, Inc. v. MKI Securities Corp., 92 N.Y.2d 335 (NY 1998) | 9, 11 |
| Transit Mix Concrete Corp. v. Local Union No. 282, 809 F.2d 963 (2d Cir. 1987) | 10 |
| Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University, 489 U.S. 468 (1989) | 7 |
| Westmoreland Coal Co. v. Entech, Inc., 100 N.Y.2d 352 (NY 2003) | 10 |
| Winston v. Boisclair, 1991 WL 150613 (S.D.N.Y. July 31, 1991) | 15 |
| W.W.W. Associates v. Giancontieri, 77 N.Y.2d 157 (NY 1990) | 10 |