Leonard Benowich (LB-6129)
ROOSEVELT & BENOWICH, LLP
1025 Westchester Avenue
White Plains, New York 10604
(914) 946-2400

Vincent Briccetti (VB-3285)
BRICCETTI, CALHOUN & LAWRENCE, LLP
81 Main Street
White Plains, New York 10601
(914) 946-5900

**Attorneys for Plaintiffs**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------x

| | |
|---|---|
| PRM REALTY GROUP, LLC, et al., | 04 Civ. 3150 (BSJ)(MHD) |
| Plaintiffs, | **DECLARATION OF LEONARD BENOWICH IN OPPOSITION TO MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |
| -against- | |
| STEVEN E. FISHMAN, et al., | |
| Defendants. | |

----------------------------------x

  **LEONARD BENOWICH**, pursuant to 28 U.S.C. § 1746, declares the following to be true and correct under the penalty of perjury:

  1. I am a member of the law firm of Roosevelt & Benowich, LLP, which firm is counsel of record for plaintiffs.

  2. I submit this declaration in opposition to the motions by the Formation Entity Defendants (Arnold Whitman, Formation Capital, LLC, FC Investors, LLC and FC Properties, LLC)

1

and by the Freiberg Defendants (Freiberg, Zingarelli, Redwood Capital Advisors, LLC, Mobilex Acquisition Group, LLC and ZAC Mobilex Holdings, LLC) to dismiss the Complaint against them for lack of personal jurisdiction or, alternatively, to transfer the action to the Northern District of Georgia or the Eastern District of Philadelphia.

    3. Plaintiffs have not conducted any discovery with respect to the personal jurisdiction issues raised by these defendants. The following documents, however, demonstrate at least a *prima facie* showing that (a) there is a joint venture, (b) many of the defendants acting directly and through one or more of the defendants as their agents transacted business in New York out of which the claims in this action arise, (c) the joint venture is controlled by defendants Fishman and Whitman, each of whom – or their respective entity affiliates – control the investments made in and by the joint venture, and that (d) each of the defendants acted with the knowledge and consent of, and for the benefit of, each other.

    4. We respectfully request, if this Court determines that the showing contained herein is or may be insufficient, that plaintiffs be afforded leave to conduct discovery on the issue of personal jurisdiction.

**The Individual Parties**

5.  Defendant Steven Fishman ("Fishman") is the principal managing director of defendant ZA Consulting, LLC ("ZAC"). www.zaconsulting.com/fishman.html (**Exhibit 1**). Fishman is also President and Co-Chairman of defendant Formation Capital. www.formationcapital.com/meet.html (**Exhibit 2**).

6.  Defendants Fishman, ZAC and ZAC Properties, LLC ("ZCAP") have not joined in either of the motions to dismiss or transfer. Having moved to "dismiss" on the grounds that there is a purported arbitration agreement, these defendants have waived the defense of lack of *in personam* jurisdiction.

7.  Defendant Whitman is the Chief Executive Officer and, with Fishman, is a co-chairman of Formation Capital. (Ex. 2)[1]

8.  Through Fishman and Whitman, all of the defendants have transacted some business in New York.

---

[1]  *See* **Exhibit 3**, a ZAC presentation, stating that it had already achieved a successful joint venture with "Formation Capital," and that ZAC had a solid pipeline of transactions in process for ZAC, Formation Capital, Formation Capital Realty and other entities. According to footnote 3 to the consolidated financial statements of ZAC for the years ended December 1999 and 2000, ZAC and HCCF Management Group, LLC (an entity controlled by defendant Whitman) formed Formation Capital effective January 1999. (Ex. 3 at 3.)
    Voluminous documents are annexed not in their entirety, but in excerpts.

3

9. Defendant Steven Freiberg ("Freiberg") is employed by ZAC and, upon information and belief, is ZAC's chief financial officer.

10. Defendant Anthony Zingarelli ("Zingarelli") is employed by ZAC and, upon information and belief, is ZAC's chief operating officer and chief information officer.

**The Joint Venture - and the New York Contacts**

11. In December 2001, Fishman represented to plaintiff Morris in writing that he was entering into the joint venture with Morris on behalf of himself and Whitman. (December 29, 2001 agreement; **Exhibit 4**).[2] Prior thereto, Fishman had entered into at least one other agreement with prospective investors in this joint venture in which he stated that he was acting on behalf of Formation Capital.[3]

12. Fishman admittedly has transacted business in New York and has had many contacts in New York with respect to the financing of and investment in the various joint venture

---

[2] "With respect to health care finance realty services where S.Fishman/ZA has Arnie Whitman as partner but speaks for him in these matters with authority...the combination will be Fishman 33.3% - Morris/PRM 33.3% - Whitman 33.3% on healthcare real state fee/merchant banking - Formation Capital, by name." (Ex. 4, item ii.)

[3] "The following agreement is made by Steve Fishman personally and on behalf of [ZAC], Formation Capital...." (**Exhibit 5**)

4

entities, as well as the re-payment of such loans, and other commitments.

13. In January 2002, Morris, Fishman and Whitman entered into a "Contribution Agreement" which contains a New York choice of law clause. (**Exhibit 6**)

14. As part of the financing of the Beverly transaction, which is described in the Complaint, in October 2002, Fishman, ZAC and ZACP entered into the Assignment of Economic Interest with Morris. (**Exhibit 7**) That "Assignment Agreement" contains a New York forum selection clause and a New York choice of law clause. The Assignment Agreement also contains a waiver of any objection to venue in New York and of the right to object that venue in New York is inconvenient.

15. Defendant Formation Capital is "a [ZAC] affiliate providing financial advisory services, mortgage products and liquidity options for senior living, and long-term care and health care companies." (Ex. 1)

16. The operations of ZAC and its affiliates, and the operations of Formation Capital and its affiliates are so intertwined that ZAC's Website contains a staff telephone directory, "Staff Directory", on which at least 6 people (including defendant Whitman) are identified as being on ZAC's "staff" by reference to "Formation Capital." (www.zaconsulting.com/contact2.html; **Exhibit 8**)

5

17. The "Staff Directory" also includes several employees identified by reference to defendant "Redwood Capital Advisors, LLC" and to ZAC Capital Partners, LLC, defendant Zingarelli's purported employer.

18. Many of the claims asserted in the Complaint arise out of plaintiffs' investment in and his right to share in the profits, losses and other distributions arising out of and in connection with, the joint venture, and its various investments.

19. The operations and management of FC Properties, LLC (through which the Beverly assets were acquired) and FC Investors, LLC (through which the joint venture and these defendants made their investment in the Beverly assets) are controlled by Fishman and Whitman (*see e.g.* Amendment 1 to FC Investors Operating Agreement, §7.2.5(b), **Exhibit 9**).

20. According to its Operating Agreement, the stated purpose of FC Properties is to:

> form and invest in Formation Properties I, LLC and Formation Properties II, LLC (the "Investment Entities") which will acquire certain parcels of real property located in the State of Florida from Beverly Health and Rehabilitation Services, Inc. and its Affiliates.

(**Exhibit 10**)

21. FC Properties is controlled by Whitman and/or Formation Capital.

6

22. FC Investors is controlled by FC Investors, Inc., its manager, of which Fishman is president.

23. With respect to the Beverly transaction (around which some, but not all of the claims in this action arise), the Assignment Agreement contains this description, or "Transaction Snapshot" of the transaction:

> On January 8, 2002, [defendant] FC Properties, LLC acquired two real estate portfolios (referred to as "asset pools") from Beverly Enterprises. The pools consisted of a total of 53 nursing home facilities in the Southeastern portion of the United States. Pool #1 consisted of 49 nursing homes and Pool #2 consisted of 4 nursing homes.
> The total purchase price of $177,500,000 consisted of the following:
> Base Purchase Price              $165,000,000
> Capitalized Acquisition Costs     12,500,000
> Total Purchase Price             $177,500,000

(Ex. 7)

24. The Assignment Agreement specifies that the Beverly deal was "funded" from a number of sources, including $7 million from defendant FC Investors and the majority of the balance - $155 million - from such institutional lenders as Salomon Brothers Realty ("SBR") ($55 million-hybrid debt), SBR ($75 million) and BlackAcre Bridge Capital ("BlackAcre") ($25

7

million). These loans were negotiated and made in New York. *See* ¶28, *infra*.

25.  The Assignment Agreement also acknowledges that plaintiffs provided ZACP with $1.2 million "a significant portion of which was contributed by ZACP to FC INVESTORS, LLC...in return for the Series A Shares, Series B Shares and Series C Shares as disclosed on Exhibit C." Defendants, thus, used plaintiff's money to invest in FC Investors.

26.  The Assignment Agreement continues to provide: "Plaintiffs' shares were subsequently assigned to Arisal Florida Enterprises, LLC, pursuant to Notes 1 and 2 on Exhibit C. In consideration thereof, the Parties have agreed that ZACP shall assign to [Plaintiffs] the economic interest associated with the Shares...." (*Id.*)

27.  Plaintiffs' investment in or funding of ZACP was instrumental in defendants' ability to raise their portion of the funds that were necessary in order to conclude the Beverly transactions. Ex. 7.

28.  At least with respect to the Beverly transaction, defendants transacted a substantial amount of business in New York - they raised almost all of the $177,500,000 purchase price for the Beverly deal in New York:

   a.  in January 2002, defendant FC Properties (acting through Fishman), entered into a loan agreement

8

        with SBR, pursuant to which it borrowed $55 million; the loan agreement recites that the loan was negotiated and made in New York, is governed by and to be construed in accordance with New York law, contains a consent to personal jurisdiction in New York and a New York forum selection clause and recites that New York "has a substantial relationship to the parties and to the underlying transaction." (**Exhibit 11**; §8.3);[4]

b.    at about the same time, Formation Properties I, LLC (also acting through Fishman), entered into a Loan Agreement with SBR, Blackacre and LaSalle Bank National Association ("LaSalle"), pursuant to which it borrowed $100 million; that loan agreement provides that the loan was negotiated and made in New York, is governed by and to be construed in accordance with New York law, contains a consent to personal jurisdiction in New York, a New York forum selection clause and a consent to suit in this Court. And, like the FC

---

[4] "This Agreement was negotiated in New York and made by Lender and accepted by Borrower in the State of New York, and the proceeds of the Note delivered pursuant hereto were disbursed from New York, which State the parties agree has a substantial relationship to the parties and to the underlying transaction...." (§8.3)

9

Properties loan agreement, that agreement recites that New York "has a substantial relationship to the parties and to the underlying transaction." **Exhibit 12;** §8.3).

c. Defendants Fishman, Whitman and other individuals executed at least two Guaranties, each of which recites that it was negotiated and made in New York, is governed by and to be construed in accordance with New York law, and contains a consent to jurisdiction in New York and a consent to suit in this Court (**Exhibits 13 and 14**).

d. As part of the Beverly financing package, SBR and 4F Funding, Inc. ("4F") entered into a Subordination Agreement, which recognized that 4F had loaned FC Properties $3 million, and which recited that FC Properties "owns all of the ownership interests in Formation Properties I, LLC and Formation Properties II, LLC and FC Investors, LLC and FC Management Inc. own all of the ownership interests in [FC Properties"] (**Exhibit 15**) This Subordination Agreement also states that it is governed by and to be construed in accordance with New York law, and provides that all suits shall be in this district.

  e. In October 2003, Citigroup Global Markets Realty Corp. ("Citigroup"), FC Note Investors, LLC (FC Note") and FC Properties entered into a Note Acquisition Agreement (**Exhibit 16**) pursuant to which Citigroup and FC Note acquired the $4 million promissory note given by FC Properties to 4F.  According to the Operating Agreement for FC Note (**Exhibit 17**), its members are ZAC Note Investors, LLC (of which Fishman is the sole member, see Operating Agreement of ZAC Note Investors, LLC, **Exhibit 18**), Whitman and two other individuals, and ZAC Note Investors and Whitman each contributed $500,000 to FC Note's capital. This Note Acquisition Agreement provides that it shall be governed by and construed in accordance with the laws of the State of New York without regard to its conflicts of laws principles or rules." (*Id.*, at 4)[5]

  f. As part of the acquisition of the foregoing note, FC Properties reissued a note to FC Note for $1.2 million.  This $1.2 million note (**Exhibit 19**) provides that it was "negotiated in New York, and

---

  [5] This Note Acquisition Agreement is signed by Fishman on behalf of both FC Note Investors, LLC and FC Properties, LLC.

11

        made by the maker and accepted by the Holder in the State of New York, and the proceeds of the Note were disbursed from new York, which State the parties agree has a substantial relationship to the parties and the underlying transaction...," it contains a consent to personal jurisdiction in New York, designates the state and federal courts in New York, New York as the forum for any litigation, and waives any objection to venue or inconvenient forum.

29.    Defendants paid defendant David Schick[6] to raise money and find investors for them and for the investments to be made by and through the joint venture.  In 2003, Schick (or an entity controlled by him) was paid:

| | |
|---|---|
| $37,500 | by defendant Redwood Capital Advisors, LLC; |
| $26,000 | by defendant ZA Consulting, LLC; and |
| $18,000 | by defendant Commercial Formation Capital, LLC. |

(*See* Forms 1009 annexed as **Exhibit 20**)

---

[6]    As this Court is aware, Defendant Schick was indicted, and was recently "sentenced to 97 months for his scheme to defraud several banks through a check kiting scheme.  In this scheme, Schick funneled worthless checks through a network of shell corporations he set up." www.fbi.gov/pressrel/pressrel04/contaction091704.html

30. In addition, it appears that Schick was promised an equity interest in the "Centennial" transaction – a recent investment made by the joint venture. In an e-mail sent from Schick to Fishman on May 23, 2004 – after this action was commenced – Schick instructed Fishman as to the allocation of the "back end participation for Centennial." Those instructions designated an individual and several entities, one of which (SRT Holdings, LLC) is the same entity to which some of Schick's payments were made (see Ex. 20) – in whose names the "back end participation should be placed." (**Exhibit 21**)

31. It also appears that since at least March 2003, Fishman and Schick had a standing, overarching agreement with respect to Schick's provision of investor financing for the joint venture's transactions. (*See* Exhibit 22)[7] The schedule annexed to Ex. 22, which relates to the "Genesis" deal (which is also described in the Complaint) shows that Fishman (ZAC) and Whitman were participating with Schick, as partners or joint venturers.

---

[7] Schick has: the "right to permanently invest up to 25% in any deal we do;" "the obligation to fund 20% on a pari [passu] basis of all risk dollars we have in a deal;" the "obligation to bring us any and all opportunities they come across in health care for us to consider being involved in;" the "obligation to fund our equity requirements beyond our own capital requirements in each deal (e.g. we need 3 million in a deal, we want to put up $500, [Schick] has to raise [$]2.5." (Ex. 22)

13

WHEREFORE, I respectfully request that defendants' motions to dismiss for lack of personal jurisdiction, or for transfer, be denied in all respects.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 1, 2004 at White Plains, New York.

_____
Leonard Benowich